13815.  SOLOMON *v.* THE STATE.

BROYLES, C. J.  The evidence was not sufficient to authorize the defendant's conviction, and the court therefore erred in overruling the general grounds of the motion for a new trial. It is unnecessary to consider the special grounds of the motion.

*Judgment reversed.   Luke and Bloodworth, JJ., concur.*

DECIDED NOVEMBER 14, 1922.

Accusation of cheating and swindling, from city court of Jesup — Judge Clark. June 9, 1922.

The accusation was based on the " labor-contract act " (Penal
Code of 1910, §§ 715-6). The main contention of the accused, in
the brief of his counsel in this court, was that the State failed to
show, by affirmative proof, that without good and sufficient cause
he failed to perform the services in question. The prosecutor, J.
W. Sasser testified: " I am a member of the firm of J. W. Sasser
& Company. . . On January 27, 1922, Elbert Solomon entered
into a verbal contract with J. W. Sasser & Company to put up
cups on pine trees on the turpentine farm of J. W. Sasser & Com-
pany at $1.25 per day and continue until he had made sufficient time
at the rate of $1.25 per day to pay for the amount of supplies furn-
ished him, which was $10.70. Said contract was to commence on
January 30, 1922. After having made this contract we furnished
merchandise to the amount of $10.70. We advanced him this
merchandise on the faith of the contract made with him, and if he
had not made this contract we would not have let him have any-
thing. He never worked a day with us after he obtained these
advances, but left our place some time that night or early the
next morning. I have not seen him since . . until this morn-
ing. I do not know why he left us. He did not perform the
labor as he contracted; nor has he paid us for the merchandise,
and he has not returned the merchandise we let him have. We suf-
fered a loss of $10.70, which was the amount of merchandise we
let him have. This contract was made in Wayne county, and we
made him the advances in this county. He ran away the same
night he got these goods, to where I do not know. He never has
returned to work, and he has never paid me. . . He had worked
for us, but had not been working for some ten days when the con-
tract was made. . . He has been working for us more than a
year, but not regular. I made a new contract with him at the time
he got these goods. . . Whenever I made him any advances or
let him have anything I made a new and distinct contract with
him. . . He owes us about $85 or $90 in addition to this $10.70.
After trying the prosecution I refused to accept the $10.70 unless
he paid all he owed us. I do not know why this negro left us. So
far as I know I gave him no cause to leave us. I had a letter after
this warrant was sworn out, offering to pay this amount." Olin
Thompson testified that on January 27, 1922, as postmaster at

Odum, Ga., he cashed a twenty-dollar money order for Elbert Solomon, which had been sent to him from Newton, Ga.

The defendant, in his statement at the trial, said: " I never made any contract with Mr. Sasser in my life.  I commenced working for him on December 13, 1920, and worked for him until January 28, 1922, but there was never any contract between us.  I just started to work for him at $1.25 a day and kept on working. I never got them things from him as he says.  The last thing I got from him was on Monday night, January 23, 1922.  That night I got three pounds of pork and a peck of meal; it all amounted to $1. . . We had been working all that day, but it was mighty cold and rainy weather.  We all went back to the woods Tuesday morning and worked until dinner time when the boss man told us it was too cold to work, and knocked us off.  The weather was too bad to work any more that week.  On Thursday I got a letter from my father telling me that mamma was very sick and for me to come home at once. . . He sent me a money order for $20.  I got it and cashed it, and me and my wife left on the next train.  When I got home I found my mother very low and not expected to live. She had influenza.  I had not been there more than three or four days before I got down with it, and I was mighty sick for three or four weeks. . . Before I had gotten up and before I could write Mr. Sasser they arrested me.  I would have written him, but I was unable to work, and I knew he would let me have anything to go upon until I could make up the time. . . I am not over that ' flu ' yet.  I couldn't do a day's work in them turpentine woods to save my life.  I am too weak to work long at the time. . . When I went home to my mamma I left all my furniture and everything I had in my house, and I intended to come right back to Mr. Sasser's, and I was coming back if I hadn't caught the ' flu.' . . I knew Mr. Sasser well enough to know he wasn't gwine to feed me and my wife when I wasn't able to work. . . Papa has been letting us stay with him and getting us a little something to live on.  The other colored folks has been helping us too."  The prosecutor, in his testimony in rebuttal, said he " could not say but that this negro told the truth all the way through.  He made me a good negro laborer and I thought well of him. . . He carried all he had; shipped it off at night.  He never let me know where he was until I had him caught."

*Thomas & Walker, Benton Odom,* for plaintiff in error, cited: 16 *Ga. App.* 216; 22 *Ga. App.* 274; 26 *Ga. App.* 421; Id. 426 (3).

*James R. Thomas, solicitor, W. B. Gibbs,* contra.